**ROSS CONTROLS, INC., Plaintiff,**

v.

**UNITED STATES of America, DEPARTMENT of the TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

Civ. A. No. 93–4585.

United States District Court,
E.D. Pennsylvania.

Oct. 15, 1993.

Bradley K. Moss, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, PA, for plaintiff.

Charles M. Flesch, Tax Div. of U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

I am being called upon to decide, under the wrongful levy statute, whether a plaintiff corporation in the same business as a liquidated taxpayer corporation, with the same employees, customers and suppliers as the taxpayer corporation, and controlled by the same individuals who controlled the taxpayer corporation, can successfully demonstrate a persuasive position that it is not liable for the tax debt of the liquidated taxpayer corporation. I find that, under these facts, it is unable to successfully demonstrate a persuasive position that it is not liable for the tax debt of the liquidated corporation.

Before me is the motion of plaintiff Ross Controls, Inc. ("Ross Controls") for a preliminary injunction pursuant to the wrongful levy statute, 26 U.S.C. § 7426, to enjoin defendant, the Internal Revenue Service, from further seizure and levy upon plaintiff's property in collection of federal taxes due from a liquidated corporation, Milross Controls, Inc. ("Milross").

I held a two-day evidentiary hearing on plaintiff's motion on September 2 and 3, 1993. The parties then submitted their proposed findings of fact and conclusions of law. I now make the following findings.

## I. *Findings Of Fact.*

Milross, a corporation which is liquidated, was at one time a Pennsylvania corporation that manufactured electro-mechanical products for the computer, aircraft and semiconductor industries at its plant at 511 Second Street Pike, Southhampton, Pennsylvania. Its sole shareholder and officer was Mr. Milton Ross ("Mr. Ross").

Milross used a trade name and did business as "The Milton Ross Company." Stationary and invoices used by Milross included the business name of "The Milton Ross Company." Milross was also listed in the 1991 Bell Atlantic Business To Business Telephone Book as "The Milton Ross Company."

Milross did business with two affiliated companies located in England—The Milton Ross Company, Ltd.[1]—and France—Milton Ross S.A.R.L. These foreign-based companies appeared on the letterhead of Milross. The French company purchased Milross products and sold them to different companies around the world. At some point in time, Mr. Ross had an ownership interest in or was affiliated with the Milton Ross Co., Ltd. and the Milton Ross Co. S.A.R.L.

Beginning in 1978, a delegate of the Secretary of the Treasury made numerous assessments against Milross for failing to pay employee withholding taxes. After making some payments to and unsuccessfully negotiating a settlement with the IRS, Milross filed a bankruptcy petition seeking the opportunity to reorganize pursuant to Chapter 11 of the Bankruptcy Code on March 5, 1990.

During the time that Milross was in Chapter 11, a corporation called Jaross Corp., Inc. ("Jaross"), operated out of the same premises as Milross.[2] Jaross was set up to sell Milross products and to receive payments from the customer.

While Milross was in Chapter 11, Mr. Ross met with representatives of the IRS to propose buying or leasing the assets of Milross back from the IRS so that he could start another company in order to pay the back taxes due the IRS. The IRS rejected this proposal. Mr. Ross also asked the IRS' consent to remove molds that were owned by Milross customers and for permission to complete Milross' open or outstanding customer orders. The IRS did not agree.

Milross continued to operate until on or about November 1, 1991, when the Milross bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation upon the motion of the IRS. Milross closed its doors at 511 Second Street Pike immediately after the conversion.

On November 4, 1991, five days after Milross closed its doors, "The Milton Ross Company" ("Milton Ross Co.") was incorporated and began operating at 975 Jaymore Road, Southhampton, Pennsylvania. Milton Ross was the sole shareholder and officer of the Milton Ross Co. He does not know or recall whether stock certificates were issued to him by the Milton Ross Co. or whether a corporate minute book existed for the Milton Ross Co.

The Milton Ross Co. was in the same business as Milross—manufacturing and selling electro-mechanical products for the computer, aircraft and semiconductor industries. An injection molding machine and/or a press that was used in the manufacturing process at Milross was reacquired and relocated to the new location by Jaross, the lessee of the new premises. Approximately 50 molds that Mr. Ross claimed were customer owned were also taken to the new location.

The Milton Ross Co. hired the former employees of Milross and had the same or mostly the same suppliers and customers as Milross. In addition, it continued the same relationship that Milross had with the French company Milton Ross S.A.R.L.

In May 1992, the IRS auctioned certain items that had been owned by Milross. At the auction, representatives of the Milton Ross Co. purchased items at a price of $15,005, including molds used to make electro-

---

1. Although the English company went bankrupt in 1992, a successor corporation, known as "Milross Ltd.," operates in England today.

2. Although Milton Ross' son, Jason Ross, was president of Jaross for a short while, Milton Ross is currently the only officer and shareholder of Jaross.

mechanical products manufactured by Milross and the Milton Ross Co. All of the items sold were free and clear of any tax liens.

In October 1992, the Milton Ross Co. moved from 975 Jaymore Road to 262 Valley Road, Warrington, Pennsylvania. All of the molds, equipment, furniture and property at 975 Jaymore Road were transferred to 262 Valley Road. The lessee of 262 Valley Road is Jaross. Jaross also operates out of the 262 Valley Road premises, but the current address on Jaross checks and account statements remains 511 Second Street Pike, Southhampton, the old Milross address.

The plaintiff in the instant action, Ross Controls, Inc. ("Ross Controls") was incorporated on March 10, 1993 at the suggestion of Ian Comisky, Esquire, as an estate planning mechanism known as an estate freeze. On March 12, 1993, the Milton Ross Co. purported to sell all of its assets and liabilities to Ross Controls for $117,254.42, pursuant to an Asset–Purchase Agreement.

The purchase price was to be paid as follows:

(a) the buyer, Ross Controls, was to pay the seller, Milton Ross Co., $1,000 as an immediate down payment;

(b) the buyer, Ross Controls, was to pay a total of $112,254.42, plus interest, through 40 equal quarterly installments beginning on July 1, 1993, as provided in a promissory note; and

(c) the buyer, Ross Controls, was to pay $4,000 within 60 days of March 12, 1993, as provided for in a demand note.

The sole shareholder and officer of Ross Controls is Francesca Ross, Mr. Ross' 26 year old daughter who resides in San Francisco, California, and is employed as an account executive for Federal Express. She is not involved in running the business and receives no remuneration from Ross Controls. Francesca Ross has not made the payments required by the asset purchase agreement. The $1,000 down payment check for the purchase of Ross Controls was drawn on the checking account of the Milton Ross Co.

From March 12, 1993 to present, Ross Controls has operated at 262 Valley Road, Warrington, Pennsylvania. Its employees are essentially the employees of the Milton Ross Co. with the same jobs or duties. All of the suppliers and customers, as well as the relationship with Milton Ross S.A.R.L., are also the same. Neither customers nor suppliers or other creditors of the Milton Ross Co. were ever notified of its purported sale to Ross Controls.

No bank accounts or financial books have been established in the name of Ross Controls. Although Ross Controls obtained a federal tax identification number, the employees are all paid from the Milton Ross Co. payroll account and the Milton Ross Co. is making the federal social security and income tax withholding deposits. Mr. Ross is the sole signatory on the general operating account, the payroll account, the payroll tax account and a recently established savings account, all of which are in the name of the Milton Ross Co.

A current customer list dated August 30, 1993 is in the name of the Milton Ross Co. This list shows, among other things, the name, address, account number, and last payment date of customers, including the names of Milross customers and payments made to Milross prior to the incorporation of the Milton Ross Co.

Interest and penalties continue to accrue on Milross' tax liability. Milross' total tax liability through August 1993 is $4,119,922.93.

On or about August 2, 1993, the IRS filed notices of federal tax liens against the "Milton Ross Company as Alter Ego and/or Successor to Milross Controls, Inc." Pursuant to an application for a writ of entry, supported by the affidavit of Robert Misinkovich of the IRS, United States District Judge Franklin VanAntwerpen signed an order permitting IRS Revenue Officer Michael Palazzo to enter the premises at 262 Valley Road in order to seize property found therein in order to satisfy the outstanding tax indebtedness of the taxpayer.

On August 18, 1993, Revenue Officer Palazzo went to the premises at 262 Valley Road to serve an IRS levy. Mr. Palazzo

served Mr. Ross with the notice of levy, a taxpayer's bill of rights form, and the writ of entry. Revenue Officer Palazzo made an inventory of the property seized by the IRS pursuant to the levy. The employees were permitted to remove their personal items, and the IRS had the locks changed to secure the premises.

The IRS also levied upon four (4) bank accounts, all of which are in the name of the Milton Ross Co. The bank accounts levied upon contained a total of approximately $60,-000–70,000. Shortly thereafter, the IRS also levied on seven (7) account receivables of the Milton Ross Co. as alter ego and/or successor to Milross.

The property seized by the IRS at the 262 Valley Road premises, pursuant to its levy, includes: (a) the 50 or 60 molds that Mr. Ross originally removed from Milross' premises that were allegedly owned by customers; (b) 20 to 30 newer molds that were allegedly owned by customers; (c) customer owned supplies (plastic); and (d) an injection molding machine allegedly owned or leased by Jaross.

Since August 27, 1993, I have permitted the business to operate daily between the hours of 8:30 a.m. to 5:30 p.m. pending disposition of plaintiff's motion for a preliminary injunction. Expenses of the business are being paid out of the escrow fund established under paragraph 4 of my August 27, 1993 order granting plaintiff's motion for a temporary restraining order.

II. *Conclusions Of Law.*

A. *Standards for preliminary injunctive relief under the wrongful levy statute.*

The Anti–Injunction Act, 26 U.S.C. § 7421(a), prohibits any action for the restraint on the assessment or collection of tax:

> Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), and 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax is assessed.

Ross Controls brings this suit pursuant to the statutory exception to the Anti–Injunction Act for wrongful levy. 26 U.S.C. § 7426(b)(1). The wrongful levy statute provides as follows:

(a) Actions permitted.—

> (1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. . . .

\* \* \* \* \* \*

(b) Adjudication.—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

> (1) Injunction.—If a sale or levy would irreparably injure rights in property which the court determines to be superior to the rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

In suits that seek to restrain the collection of taxes, my discretion to issue an injunction "is limited by the general policy which disfavors enjoining the taxing authority." *Al–Kim, Inc. v. United States,* 650 F.2d 944, 948 (9th Cir.1979); *see also Enochs v. Williams Packing Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); *cf. Iannelli v. Long,* 487 F.2d 317, 318 (3d Cir.) (Anti–Injunction Act "reflects an evident purpose to protect the public revenue from court imposed delays in the collection of taxes"), *cert. denied,* 414 U.S. 1040, 94 S.Ct. 541, 38 L.Ed.2d 330 (1973).

Generally to obtain preliminary relief under the statute, a plaintiff must show (1) the threat of irreparable harm; (2) that the balance between the harm alleged by plaintiff outweighs the injury caused by granting the injunction; (3) the likelihood of success on the merits; and (4) the degree of public interest. *Midwest Finance, Inc. v. United States,* 92–2 U.S.T.C. (CCH) ¶ 50,494, 1992

Westlaw 316317 at *3 (S.D.Iowa 1992), *aff'd,* 991 F.2d 801 (8th Cir.1993).

■ Both parties cite the same recent decisions from other district courts specifically addressing preliminary injunctive relief under the wrongful levy statute. Plaintiff and the IRS agree that plaintiff need only demonstrate a persuasive position that it is likely to succeed on the merits. *Midwest Finance, Inc., supra,* 92–U.S.T.C. (CCH) ¶ 50,494, 1992 Westlaw at *3. To succeed on the merits, *a plaintiff must show that its rights in the property are superior to the rights of the United States and that the levy or sale would irreparably injure rights in the property. Id.*

Thus, in order to prevail on its motion for preliminary injunction, the burden is on Ross Controls to demonstrate a persuasive position that it has superior rights in the seized property because it is neither an alter ego nor a continuation of the taxpayer Milross. In order for Ross Controls to be liable, Milross' tax liability must have passed to the Milton Ross Co. under either an alter ego or successor corporation theory. Then, Ross Controls must have succeeded to the Milton Ross Co.'s liability under either theory. In addition, Ross Controls must satisfy the irreparable harm prong by demonstrating irreparable injury to the property subject to levy, seizure or sale rather than to plaintiff's rights in other property. *Id.; Ketcham v. United States,* 783 F.Supp. 511, 519 (D.Nev. 1991).

### B. *Ross Controls has not demonstrated a persuasive position that it is likely to succeed on the merits.*

The IRS contends that its seizure of the property is not wrongful because the Milton Ross Co. and Ross Controls are either alter egos of Milross or successor corporations that are liable for the tax obligations of Milross.

■ It is well-settled that a successor corporation may be held liable for the debts and liabilities of its predecessors "where (1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor, (2) the transaction amounts to a consoli- dation or de facto merger; (3) the purchasing corporation is merely a continuation of the transferor corporation; or (4) the transaction is fraudulently entered into to escape liability ...". *Philadelphia Electric Co. v. Hercules, Inc.* 762 F.2d 303, 308 (3d Cir.) (applying Pennsylvania law), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985).[3] The interrelated concepts of de facto merger and mere continuation consider such factors as continuity of management, personnel, location, assets, and operations. *See Atlas Tool Co., Inc. v. Commissioner,* 614 F.2d 860, 870–71 (3d Cir.) (applying continuity factors to find New Jersey transferee liable for tax obligations of transferor), *cert. denied,* 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980).

■ Filing for Chapter 7 does not prevent Milross from having a successor corporation. A Chapter 7 liquidation petition generally terminates a corporation and results in a stay preserving the assets for the estate. The petition, however, does not prevent continuation of the corporation to receive tax deficiency notices. 11 U.S.C. § 362(b)(9). One court has found that the corporation continues for purposes of products liability. The court recognized the purchaser of the assets of a Chapter 7 debtor as a successor corporation. *Goncalves v. Wire Technology & Machinery Co.,* 601 A.2d 780 (Sup.Ct.N.J.1991).

The IRS emphasizes facts which persuade me that the Milton Ross Co. and Ross Controls are mere continuations of Milross. The absence of corporate formalities is compounded by the undisputed facts that all three companies were in the identical business of manufacturing electro-mechanical products and had the same employees, suppliers and customers. All three companies use the same equipment and molds. All utilized the Jaross corporation for business purposes and have sustained a relationship with Milton Ross S.A.R.L. Mr. Ross actively operated all three companies.

Mr. Ross re-incorporated the liquidated Milross corporation under its trade name the Milton Ross Co. He was the sole officer and shareholder of both companies. Subsequently, on the advice of his attorney, he attempt-

---

**3.** Whether the standard for successor corpora- tions has been met is decided under state law.

ed an estate freeze of this asset by "selling" the re-incorporated company. The sole shareholder of the purchaser is his grown daughter who lives and works in California and who has no involvement with the business.

The only "payment" on this purchase to date has been the transfer of $1,000 written on the Milton Ross Co. account. Ross Controls has no bank accounts in its name and still utilizes the Milton Ross Co. accounts. None of the company's customers or suppliers were notified when Ross Controls "purchased" the Milton Ross Co.

The evidence supports the government's position that the Milton Ross Co. and Ross Controls are successor corporations that are liable for Milross' tax indebtedness. I conclude that Ross Controls has not shown a persuasive position that its rights in the seized property are superior to those of the government. Because plaintiff cannot prevail on this prong, it is unnecessary to consider the irreparable harm factor under the statute.[4]

For the foregoing reasons, it is ORDERED that plaintiff Ross Controls, Inc.'s motion for a preliminary injunction is denied. Accordingly, my prior order of August 27, 1993 is vacated.

---

4. It is also well-settled that the IRS may seek to proceed against a nominee or alter ego of a taxpayer for the "purpose of satisfying the taxpayer's obligations." *Lemaster v. United States,* 891 F.2d 115, 119 (6th Cir.1989) (citing *Loving Saviour Church v. United States,* 728 F.2d 1085 (8th Cir.1984)). In order to determine whether one entity is an alter ego of another, I examine the totality of the circumstances. *Century Hotels, Inc. v. United States,* 952 F.2d 107, 110 (5th Cir.1992); *Valley Finance, Inc. v. United States,* 629 F.2d 162, 172 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The controlling issue under both state and federal law of alter ego is "who has 'active' or 'substantial' control." *Shades Ridge Holding*

*Co. v. United States,* 888 F.2d 725, 728–29 (11th Cir.1989). Some cases consider the control the alter ego exercises over the taxpayer. *See, e.g., Wolfe v. United States,* 798 F.2d 1241 (9th Cir. 1986). Other cases perform the analysis in reverse, considering how much control the taxpayer exercises over the alter ego. *See Shades Ridge Holding Co., supra,* 888 F.2d at 728.

The Milton Ross Co. is not liable for Milross' tax indebtedness under either alter ego analysis. The Milton Ross Co. formed after Milross ceased to exist. Therefore, the Milton Ross Co. could not have exercised "active and substantial control" over taxpayer Milross. Similarly, the defunct corporation Milross was incapable of controlling another corporation.