**ROSS CONTROLS, INC., Plaintiff,**

v.

**UNITED STATES of America DEPARTMENT OF the TREASURY INTERNAL REVENUE SERVICE, Defendant.**

No. 93–4585.

United States District Court,
E.D. Pennsylvania.

Feb. 2, 1994.

Bradley K. Moss, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, PA, for plaintiff.

Charles M. Flesch, Tax Div. of U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

I am being called upon to decide whether a plaintiff corporation in the same business as a liquidated taxpayer corporation, with the same employees, customers and suppliers as the taxpayer corporation, and controlled by the same individuals who controlled the taxpayer corporation, is a successor or an alter ego of the taxpayer corporation. I find that plaintiff is both a successor and an alter ego of the taxpayer corporation.

Plaintiff Ross Controls, Inc. ("Ross Controls") filed a complaint and a motion for a preliminary injunction pursuant to the Wrongful Levy Statute, 26 U.S.C. § 7426, to enjoin defendant, the Internal Revenue Service, from further seizure and levy upon plaintiff's property in collection of federal taxes due from a liquidated corporation, Milross Controls, Inc. ("Milross").

I held a two-day evidentiary hearing on plaintiff's motion on September 2 and 3, 1993. The parties then submitted proposed findings of fact and conclusions of law. In an order dated October 15, 1993, I made findings of fact and denied the preliminary injunction on the ground that Ross Controls could not demonstrate a persuasive position that it was not liable for the tax debt of the liquidated taxpayer corporation. *Ross Controls, Inc. v. U.S. Dept. of the Treasury, Internal Revenue Service,* 160 B.R. 527 (E.D.Pa.1993). The IRS now moves for summary judgment on the complaint.

### I. Basis for Summary Judgment After a Hearing for Preliminary Injunction

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on·file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

"[I]f there is no contradictory evidence, facts testified to in a hearing may be accepted as true for summary judgment purposes without an assessment of the credibility of the witnesses." *Waskovich v. Morgano,* 2 F.3d 1292, 1296 (3d Cir.1993) (quoting *Hancock Industries v. Schaeffer,* 811 F.2d 225 (3d Cir.1987)). Summary judgment may not, however, be based on credibility determinations that underlie findings of fact. *Country Floors, Inc. v. A Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1062 (3d Cir.1991).

Defendant bases its motion for summary judgment on the testimony and submissions from the preliminary injunction hearing. Plaintiff "relies on the findings of fact which it filed in support of its motion for a preliminary injunction." (Pl.Br. at 3.)

All material findings of fact in my October 15, 1993 order, *see Ross Controls, supra,* were based on uncontroverted evidence presented at the preliminary injunction hearing rather than on credibility determinations. Those material findings do not differ from the proposed findings of fact submitted by plaintiff. Because in its response to the motion for summary judgment plaintiff has neither requested an opportunity to offer additional evidence nor offered additional evidence that contradicts the hearing testimony or my findings, I will decide summary judgment on the basis of the findings.of fact in my October 15, 1993 order.

Plaintiff's findings differ in a few nonmaterial respects. Where they differ, plaintiff's findings are adopted for the purposes of summary judgment and are cited as Plaintiff's Proposed Findings of Fact in Support of Its Motion for a Preliminary Injunction.

## II. *Findings Of Fact* [1]

Milross, a corporation which is liquidated, was at one time a Pennsylvania corporation that manufactured electro-mechanical products for the computer, aircraft and semiconductor industries at its plant at 511 Second Street Pike, Southhampton, Pennsylvania. Its sole shareholder and officer was Mr. Milton Ross ("Mr. Ross").

Milross used a trade name and did business as "The Milton Ross Company." Stationary and invoices used by Milross included the business name of "The Milton Ross Company." Milross was also listed in the 1991 Bell Atlantic Business To Business Telephone Book as "The Milton Ross Company."

Milross did business with two affiliated companies located in England—The Milton Ross Company, Ltd.[2]—and France—Milton Ross S.A.R.L. These foreign-based companies appeared on the letterhead of Milross. The French company purchased Milross products and sold them to different companies around the world. At some point in time, Mr. Ross had an ownership interest in or was affiliated with the Milton Ross Co., Ltd. and the Milton Ross Co. S.A.R.L.

Beginning in 1978, a delegate of the Secretary of the Treasury made numerous assessments against Milross for failing to pay employee withholding taxes. After making some payments to and unsuccessfully negotiating a settlement with the IRS, Milross filed a bankruptcy petition seeking the opportunity to reorganize pursuant to Chapter 11 of the Bankruptcy Code on March 5, 1990.

During the time that Milross was in Chapter 11, a corporation called Jaross Corp., Inc. ("Jaross"), operated out of the same premises as Milross.[3] Jaross was set up to sell Milross products and to receive payments from the customer.

While Milross was in Chapter 11, Mr. Ross met with representatives of the IRS to propose buying or leasing the assets of Milross back from the IRS so that he could start another company in order to pay the back taxes due the IRS. The IRS rejected this proposal. Mr. Ross also asked the IRS' consent to remove molds that were owned by Milross customers and for permission to complete Milross' open or outstanding customer orders. Plaintiff contends that the IRS agreed to this request. (Pl. Facts at 3.) [4]

Milross continued to operate until on or about November 1, 1991, when the Milross bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation upon the motion of the IRS. Milross closed its doors at 511 Second Street Pike immediately after the conversion.

On November 4, 1991, five days after Milross closed its doors, "The Milton Ross Company" ("Milton Ross Co.") was incorporated and began operating at 975 Jaymore Road, Southhampton, Pennsylvania. Milton Ross was the sole shareholder and officer of the Milton Ross Co. He does not know or recall whether stock certificates were issued to him by the Milton Ross Co. or whether a corporate minute book existed for the Milton Ross Co.

The Milton Ross Co. was in the same business as Milross—manufacturing and selling electro-mechanical products for the computer, aircraft and semiconductor industries. An injection molding machine and/or a press that was used in the manufacturing process at Milross was reacquired and relocated to the new location by Jaross, the lessee of the new premises. Approximately 50 molds that Mr. Ross claimed were customer owned were also taken to the new location.

The Milton Ross Co. hired the former employees of Milross and had the same or mostly the same suppliers and customers as Milross. In addition, it continued the same

---

1. These findings are identical to the findings in my October 15, 1993 order except where Plaintiff's Proposed Findings of Fact in Support of Its Motion for a Preliminary Injunction are cited.

2. Although the English company went bankrupt in 1992, a successor corporation, known as "Milross Ltd.," operates in England today.

3. Although Milton Ross' son, Jason Ross, was president of Jaross for a short while, Milton Ross is currently the only officer and shareholder of Jaross.

4. I previously found that the IRS did not agree to the request. *See Ross Controls, supra.*

relationship that Milross had with the French company Milton Ross S.A.R.L.

In May 1992, the IRS auctioned certain items that had been owned by Milross. At the auction, representatives of the Milton Ross Co. purchased items at a price of $15,005, including molds used to make electromechanical products manufactured by Milross and the Milton Ross Co. Plaintiff contends that the money used by Milton Ross Co. at the auction did not come from Milross, but rather from customer advances. (Pl. Facts at 5.)[5] All of the items sold were free and clear of any tax liens.

In October 1992, the Milton Ross Co. moved from 975 Jaymore Road to 262 Valley Road, Warrington, Pennsylvania. All of the molds, equipment, furniture and property at 975 Jaymore Road were transferred to 262 Valley Road. The lessee of 262 Valley Road is Jaross. Jaross also operates out of the 262 Valley Road premises, but the current address on Jaross checks and account statements remains 511 Second Street Pike, Southhampton, the old Milross address.

The plaintiff in the instant action, Ross Controls, Inc. ("Ross Controls") was incorporated on March 10, 1993 at the suggestion of Ian Comisky, Esquire, as an estate planning mechanism known as an estate freeze. On March 12, 1993, the Milton Ross Co. purported to sell all of its assets and liabilities to Ross Controls for $117,254.42, pursuant to an Asset–Purchase Agreement.

The purchase price was to be paid as follows:

(a) the buyer, Ross Controls, was to pay the seller, Milton Ross Co., $1,000 as an immediate down payment;

(b) the buyer, Ross Controls, was to pay a total of $112,254.42, plus interest, through 40 equal quarterly installments beginning on July 1, 1993, as provided in a promissory note; and

(c) the buyer, Ross Controls, was to pay $4,000 within 60 days of March 12, 1993, as provided for in a demand note.

**5.** I previously made no finding regarding the source of the money used at the auction. *See*

The sole shareholder and officer of Ross Controls is Francesca Ross, Mr. Ross' 26 year old daughter who resides in San Francisco, California, and is employed as an account executive for Federal Express. She is not involved in running the business and receives no remuneration from Ross Controls. Francesca Ross has not made the payments required by the asset purchase agreement. The $1,000 down payment check for the purchase of Ross Controls was drawn on the checking account of the Milton Ross Co.

From March 12, 1993 to present, Ross Controls has operated at 262 Valley Road, Warrington, Pennsylvania. Its employees are essentially the employees of the Milton Ross Co. with the same jobs or duties. All of the suppliers and customers, as well as the relationship with Milton Ross S.A.R.L., are also the same. Neither customers nor suppliers or other creditors of the Milton Ross Co. were ever notified of its purported sale to Ross Controls.

No bank accounts or financial books have been established in the name of Ross Controls. Although Ross Controls obtained a federal tax identification number, the employees are all paid from the Milton Ross Co. payroll account and the Milton Ross Co. is making the federal social security and income tax withholding deposits. Mr. Ross is the sole signatory on the general operating account, the payroll account, the payroll tax account and a recently established savings account, all of which are in the name of the Milton Ross Co.

A current customer list dated August 30, 1993 is in the name of the Milton Ross Co. This list shows, among other things, the name, address, account number, and last payment date of customers, including the names of Milross customers and payments made to Milross prior to the incorporation of the Milton Ross Co.

Interest and penalties continue to accrue on Milross' tax liability. Milross' total tax liability through August 1993 is $4,119,922.93.

*Ross Controls, supra.*

On or about August 2, 1993, the IRS filed notices of federal tax liens against the "Milton Ross Company as Alter Ego and/or Successor to Milross Controls, Inc." Pursuant to an application for a writ of entry, supported by the affidavit of Robert Misinkovich of the IRS, United States District Judge Franklin VanAntwerpen signed an order permitting IRS Revenue Officer Michael Palazzo to enter the premises at 262 Valley Road in order to seize property found therein in order to satisfy the outstanding tax indebtedness of the taxpayer.

On August 18, 1993, Revenue Officer Palazzo went to the premises at 262 Valley Road to serve an IRS levy. Mr. Palazzo served Mr. Ross with the notice of levy, a taxpayer's bill of rights form, and the writ of entry. Revenue Officer Palazzo made an inventory of the property seized by the IRS pursuant to the levy. The employees were permitted to remove their personal items, and the IRS had the locks changed to secure the premises.

The IRS also levied upon four (4) bank accounts, all of which are in the name of the Milton Ross Co. The bank accounts levied upon contained a total of approximately $60,-000–70,000. Shortly thereafter, the IRS also levied on seven (7) account receivables of the Milton Ross Co. as alter ego and/or successor to Milross.

The property seized by the IRS at the 262 Valley Road premises, pursuant to its levy, includes: (a) the 50 or 60 molds that Mr. Ross originally removed from Milross' premises that were allegedly owned by customers; (b) 20 to 30 newer molds that were allegedly owned by customers; (c) customer owned supplies (plastic); and (d) an injection molding machine allegedly owned or leased by Jaross.

By order dated August 27, 1993, I permitted the business to operate daily between the hours of 8:30 a.m. to 5:30 p.m. pending disposition of plaintiff's motion for a preliminary injunction. Expenses of the business were paid out of the escrow fund established under paragraph 4 of the order granting plaintiff's motion for a temporary restraining order.

By order dated October 15, 1993, I vacated the August 27 order and denied plaintiff's request for a preliminary injunction. The business ceased operations October 17, 1993.

### III. Conclusions of Law

■ The IRS proceeded against the "Milton Ross Co. as Alter Ego and/or Successor to Milross Controls, Inc." It is well-settled that a successor corporation or an alter ego corporation may be held liable for the tax debt of the predecessor corporation. *See Philadelphia Electric Co. v. Hercules, Inc.,* 762 F.2d 303, 308 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985); *Lemaster v. United States,* 891 F.2d 115, 119 (6th Cir.1989).

■ Ross Controls brought this suit pursuant to the statutory exception to the Anti–Injunction Act for wrongful levy. 26 U.S.C. § 7426(b)(1). To succeed on that claim, plaintiff must show that its rights in the property are superior to the rights of the United States and that the levy or sale would irreparably injure rights in the property. *Midwest Finance, Inc. v. United States,* 92–2 U.S.T.C. (CCH) ¶ 50,494 (1992 Westlaw 316317 at *3) (S.D.Iowa 1992), *aff'd,* 991 F.2d 801 (8th Cir.1993).

■ Ross Controls sought preliminary relief under the statute, which required them to show (1) the threat of irreparable harm; (2) that the balance between the harm alleged by plaintiff outweighs the injury caused by granting the injunction; (3) the likelihood of success on the merits; and (4) the degree of public interest. *Id.* Ross Controls was required to demonstrate a persuasive position that it had superior rights in the seized property because it was neither an alter ego nor a continuation of the taxpayer Milross.

In my October 15 order, I denied the request for a preliminary injunction and held that Ross Controls had not demonstrated a persuasive position that it was not liable for the tax indebtedness of Milross. That decision was based on my finding that Ross Controls was a continuation of the Milton Ross Co., which was a continuation of Milross. *Ross Controls, supra.* In the same order, I noted in a footnote that the alter ego

theory was not applicable to the present case, and that Milton Ross Co. and Ross Controls were not alter egos of Milross.

The IRS moves for summary judgment on the ground that Ross Controls does not have superior rights in the property because Milton Ross Co. and Ross Controls are the continuations and alter egos of Milross. I agree.

■ I find that Milton Ross Co. and Ross Controls are the continuations of Milross and, therefore, that plaintiff is responsible for the tax indebtedness of Milross for the reasons set forth in my order of October 15. See Ross Controls, supra.[6] Having reconsidered alter ego law and the cases cited by the government, I also find that Milton Ross Co. and Ross Controls are the alter egos of Milross and, therefore, liable for Milross' tax indebtedness on this theory.

The IRS may seek to proceed against a nominee or alter ego of a taxpayer for the "purpose of satisfying the taxpayer's obligations." Lemaster v. United States, 891 F.2d 115, 119 (6th Cir.1989) (citing Loving Savior Church v. United States, 728 F.2d 1085 (8th Cir.1984)). I stated previously that the controlling issue under both state and federal law of alter ego is "who has 'active' or 'substantial' control." Shades Ridge Holding Co. v. United States, 888 F.2d 725, 728–29 (11th Cir.1989). I then found that "The Milton Ross Co. formed after Milross ceased to exist. Therefore, the Milton Ross Co. could not have exercised 'active and substantial control' over taxpayer Milross. Similarly, the defunct corporation Milross was incapable of controlling another corporation." Ross Controls, supra.

Courts performing the alter ego analysis, however, look not only to control, but also to the similarities between businesses. The United States Supreme Court has stated that an alter ego is created by "a mere technical change in the structure or identity of the employing entity ... without any substantial change in its ownership or management." Howard Johnson Co., Inc. v. Detroit Local Joint Executive board, 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974). Courts consider whether the old and new employers share "'substantially identical' management, business purpose, operation, equipment, customers and supervision, as well as ownership." NLRB v. Omnitest Inspection Services, Inc., 937 F.2d 112, 117 (3d Cir.1991).

■ Because similarity and not merely control is the touchstone, several cases have held that a corporation that has ceased doing business may have an alter ego. See, e.g., Omnitest, 937 F.2d at 115 (alter ego commenced business the day after former corporation closed). Even a corporation that has filed for Chapter 7 liquidation may have an alter ego. See NLRB v. Better Building Supply Corp., 837 F.2d 377 (9th Cir.1988).

■ I find that Milton Ross Co. is the alter ego of Milross. Although Milross filed for Chapter 7 bankruptcy and ceased operations mere days before Milton Ross Co. opened for business, the companies shared the same business purpose and operation— the production of electro-mechanical products for the computer, aircraft and semiconductor industries. Milton Ross reacquired the injection molding machine used by Milross through Jaross. That machine and other Milross molds were used at the Milton Ross Co. premises. Milton Ross Co. hired the Milross employees, used Milross suppliers, and serviced Milross customers. Finally, the companies shared the same sole shareholder and officer—Mr. Ross.

■ Similarly, Ross Controls is the alter ego of Milton Ross Co. and Milross. Ross Controls purported to purchase Milton Ross Co., but the only purchase payment was made from a Milton Ross Co. account. Ross Controls operated with Milton Ross Co. bank

**6.** I am not persuaded otherwise by plaintiff's argument that a corporation must transfer a substantial amount of assets to another corporation in order to create a successor. (Pl.Br. at 4.) A corporation is a successor "to a company whose assets it acquires, either in whole or in part." Bogart v. Phase II Pasta Machines, Inc., 817 F.Supp. 547, 548 (E.D.Pa.1993). A transfer of intangibles—including customer contracts and lists—satisfies the rule. Id. Although Milton Ross Co. only actually purchased $15,005 worth of Milross' equipment, Milton Ross Co. maintained the same business operations, suppliers and customers as the former business.

728

accounts and employees and never even informed customers and suppliers of the purchase.

For the foregoing reasons, I find that Ross Controls is responsible for the debt of Milross under an alter ego theory.

Therefore, IT IS ORDERED that the motion for summary judgment is GRANTED in favor of defendant and against plaintiff.