**TODAY'S CHILD LEARNING CENTER INC., T/A School Age Child Care Project, Inc., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CIV. A. 97–1063.**

United States District Court, E.D. Pennsylvania.

March 6, 1998.

---

Alan C. Milstein, Sherman, Silverstein, Kohl, Rose & Podolsky, Pennsauken, NJ, for plaintiffs.

Charles M. Flesch, Tax Div. of U.S. Dept. of Justice, Washington, DC, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

This is a case in which plaintiff seeks a return of $18,152.56 from the United States government, claiming wrongful levy under 26 U.S.C. § 7426. The Unites States asserts that plaintiff, as the alter ego or successor in interest to the taxpayer, was correctly assessed the tax. After a bench trial of this case on February 19, 1998, and after considering all the evidence of record and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT [1]

1. On October 20, 1988, an entity entitled Wee Care Academy For Children, Inc. ("Wee Care") was incorporated under the laws of Pennsylvania. Patricia Rota, Steven Rota, and Andrew Rota were equal shareholders of Wee Care. Patricia Rota and Steven Rota are married, and Andrew Rota is Steven Rota's father.

2. Wee Care started operating on April 3, 1989, providing day care services. Wee Care provided day care services at the premises located at 235 Sharon Avenue, Sharon Hill, PA.

3. The premises at 235 Sharon Avenue, Sharon Hill, Pa. ("the premises") was owned by a partnership entitled Wee Care Associates ("Associates"). The partners of Associates were Patricia Rota, Steven Rota, and Andrew Rota.

4. Associates leased the premises to Wee Care.

5. At all relevant times Patricia Rota held herself out as the owner of Wee Care, and as the owner of the premises.

6. In or about 1990, Patricia Rota became the president of Wee Care. Patricia Rota was the person who actually operated Wee Care. Steven Rota's role at Wee Care was very peripheral, and Andrew Rota had no role in Wee Care.

7. Wee Care provided full-time (6:00 a.m. to 6:00 p.m.) day care services for infants through kindergarten age children. Wee Care employed a director, teachers, teacher's aids, and an office manager. Wee Care also employed Ann Franceschi as a cook.

8. Wee Care had a telephone and fax machine at the premises. Wee Care's

---

**1.** Plaintiff at trial stipulated to all but three of the government's proposed findings of fact. Accordingly, the Court adopts, in modified form, most of these unopposed findings of fact.

telephone number was 583–2273, and its facsimile number was 583–9363.

9. Wee Care continually experienced financial difficulty. It had trouble making rental payments to Associates and fell behind in paying its federal employment taxes. Wee Care had a bad credit rating because it was unable to meet all of its financial obligations. However, in the end, Wee Care always managed to pay its employees, as well as its rent to Associates (to the Rotas).

10. On August 13, 1993, an entity entitled Today's Child Learning Centers, Inc. was incorporated under the laws of Pennsylvania.

11. Patricia Rota and Steven Rota were the only shareholders of Today's Child, but Patricia Rota could not recall ever receiving any Today's Child stock and could not recall whether any money was paid in as capital to Today's Child. Patricia Rota went from being president of Wee Care to president of Today's Child. Steven Rota, who had been the corporate secretary of Wee Care, became the secretary of Today's Child. There were no other officers or shareholders of Today's Child.

12. Patricia Rota wanted to use Today's Child as a vehicle to get away from the bad credit of Wee Care as well as to oust Andrew Rota from the business because of his criminal conviction and harassing, disruptive conduct.

13. At the time Today's Child was incorporated, no provisions were made to pay the past due employment taxes of Wee Care. Patricia Rota felt that anyone who was owed money would have to approach Wee Care.

14. In late fall of 1993, Today's Child began operating by providing after school care at four elementary schools in the Southeast Deco School District.

15. Wee Care and Today's Child shared the same offices at the premises and shared the same address. Both were run by Patricia Rota.

16. In early 1994, Today's Child assumed the business of Wee Care by providing the same exact day care services at the premises.

17. Today's Child assumed the Wee Care lease with Associates for the same premises.

18. Today's Child maintained the same telephone number and facsimile number as Wee Care.

19. When Today's Child began providing the same full-time day care services at the premises, it hired many of the very same teachers and workers who were employed by Wee Care. For example, the Director of Wee Care, Amy DeFeo, became the Director of Today's Child. Teachers and teacher's aids (or group supervisors and assistant group supervisors as they were referred to at the day care center), such as Susan Hornberger and Amy Green who worked for Wee Care since 1989, continued to work for Today's Child at the same premises and in the same capacity. Wee Care's cook, Mrs. Franceschi, continued her duties for Today's Child. Doris Herman, the office manager of Wee Care, continued in the same capacity with Today's Child. Patricia Rota and Steven Rota's duties were basically the same as well.

20. In addition, many of the same children who were enrolled at Wee Care continued with Today's Child. There was no disruption of day-care services provided to the children enrolled at Wee Care when the business entity became Today's Child.

21. Although the day care center changed its name from Wee Care to Today's Child, substantively nothing was different. For instance, the following facets of the two purportedly distinct corporate entities remained the same: the curriculum for the students; the people running the day care center; the teachers; the type of day care services provided; the teachers' duties and salaries; the director's office; the desks, tables, and

chairs in the classrooms; video equipment; children's toys; as well as the tuition fees. Even the cook, Mrs. Franceschi, believed that nothing at the day care center had changed except for the name: it was exactly the same place before and after the day care center became known as Today's Child. Furthermore Patricia Rota informed the teachers that while the day care center's name was changing to Today's Child, everything else was staying the same.

22. New students who were enrolled in late 1993 or early 1994 at the day care center at the premises were enrolled as students of Today's Child. However, the new students were taught by Wee Care teachers, and shared classrooms with Wee Care students. This resulted in a commingling of the student body.

23. Wee Care maintained a corporate checking account, No. 330007972, at Commerce Bank. On the bank signature card, both the names of Today's Child Learning Center and Wee Care Academy, Inc. appear. As of November 5, 1993, the two authorized signatories on this account were Patricia Rota and Steven Rota.

24. Checks payable to Today's Child were deposited into Wee Care's account, No. 330007972, at Commerce Bank, evincing commingling of funds.

25. A checking account in the name of "School Age Child Care Project, Inc. t/a Today's Child Learning Centers, Inc." was maintained by Today's Child at Commerce Bank. The signature card for that account, No. 330007782, also had the name Wee Care Academy on it. The authorized signatories on this checking account were Patricia Rota and Steven Rota.

26. Checks that were made payable to Wee Care were deposited into the bank account in the name of Today's Child, account No. 330007782.

27. Wee Care ceased operating in or about May 1994. The monthly statements for the checking account, No. 330003972, show that as of February 1994, deposits were no longer made into this account. This checking account became dormant and was closed on May 6, 1994.

28. By letter dated July 29, 1994, Doris Herman, on the letterhead of Today's Child, wrote the IRS to advise that "[o]n *our* tax return for the first quarter of 1994 we indicated that said return would be our last filing as Wee Care Academy ceased operation during this period." (emphasis added) Attached to this letter was a preprinted blank Form 941 Employer's Quarterly Federal Tax Return for Wee Care.

29. Prior to the cessation of Wee Care as a going concern, Patricia Rota knew that Wee Care had an employment tax liability. In fact, the IRS was the only independent creditor of Wee Care that had not been paid.

30. In February 1996, IRS Revenue Officer Glynnis George served various levies to collect the outstanding employment tax liabilities of Wee Care. Some of the levies listed the taxpayer as Today's Child as successor in interest and/or alter ego of Wee Care. In response to this levy, the IRS was paid $8,820.53. The $8,820.53 was owed to Today's Child.

31. On May 13, 1996, the IRS received a check in the amount of $500.00, drawn on an account of Associates. The payment was made pursuant to a $500 per month installment payment agreement between the IRS and Today's Child on behalf of Wee Care.

32. When Today's Child failed to make its June 1, 1996, $500.00 payment, the IRS issued additional levies to third parties. In response, Today's Child paid the IRS $9,332.03.

33. Today's Child received copies of the notices of levy issued by the IRS which are the subject of this suit.

34. Today's Child commenced suit claiming that the IRS levies were wrongful. Plaintiff specifically alleges in its Amended Complaint that it is not the alter ego or successor to Wee Care (Amended

Compl. at ¶ 11). Today's Child currently seeks a return of the funds levied by the IRS.

## II. DISCUSSION AND CONCLUSIONS OF LAW

■ This is, for the most part, a factually uncontested case, as demonstrated by plaintiff's stipulation to all but three of the government's proposed findings of fact. The discrete issue before the Court is whether successor liability should be imposed on plaintiff, Today's Child, as the continuation, successor in interest, or alter ego of Wee Care Academy for federal tax purposes. The legality of the government's seizure by levy, pursuant to 26 U.S.C. § 6331, of Today's Child's accounts to satisfy Wee Care Academy's tax liability turns on this determination. As previously stated, the facts were, in essence, uncontested in this case. Trial elicited a few more facts. For instance, plaintiff spent most its litigation efforts in attempting to show its non-tax motivation for closing down Wee Care Academy and incorporating Today's Child, that is, to oust shareholder Andrew Rota who was harassing and disrupting the running of the day care. Given the facts stipulated to and elicited at trial, the Court turns to the law that controls this determination.[2]

### A. Continuation/De Facto Merger/Successor in Interest

■ Where a taxpayer ceases to do business, a second or successor corporation may become liable for the taxes of the taxpayer if the second corporation is the mere continuation of the taxpayer. See Ross Controls, Inc. v. United States, 160 B.R. 527, 532 (E.D.Pa.1993); Ross Controls, Inc. v. United States, 164 B.R. 721, 726 (E.D.Pa.1994). "It is well settled that a successor corporation may be held liable for the debts and liabilities of its predecessors 'where (1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor; (2) the transaction amounts to a consolidation or de facto merger; (3) the purchasing corporation is merely a continuation of the transferor corporation; or (4) the transaction is fraudulently entered into to escape liability.'" Ross Controls, 160 B.R. at 532 (quoting Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303, 308 (3d Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985)). These instances constitute exceptions to the general rule that a transferee or successor company is not liable for the debts and liabilities of its predecessor. Philadelphia Electric Co., 762 F.2d at 308. Factors such as continuity of management, personnel, location, assets, and operations, are weighed when considering the interrelated concepts of de facto merger and mere continuation. Ross Controls, 160 B.R. at 532; see also Atlas Tool Co., Inc. v. Commissioner of Internal Revenue, 614 F.2d 860, 870–71 (3d Cir.) ("In de facto situations, the factors considered have included: (1) continuation of the same shareholder control particularly in the instance of a sole shareholder, (2) intention to dissolve the selling company, (3) retention of executive and operating personnel of the vendor by the transferee, (4) transfer of assets and shares, (5) assumption of vendor's liabilities, [and] (6) a 'pooling of interests.'"), cert. denied, 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980). Not every factor set forth above is required for a court to find a continuation or

---

**2.** The Court notes that the burden of proof in a wrongful levy action is on the plaintiff. See, e.g., Century Hotels v. United States, 952 F.2d 107, 109 (5th Cir.1992). However, even if the burden of proof were on the government, the Court finds that the government would have carried its burden.

Furthermore, as both parties look to Pennsylvania law in arguing the issue of alter ego

or successor in interest, the Court applies Pennsylvania law in making this determination. See, e.g., Towe Antique Ford Foundation v. Internal Revenue Service, 999 F.2d 1387, 1391 (9th Cir.1993) ("We apply the law of the forum state in determining whether a corporation is an alter ego of the taxpayer.").

a de facto merger. *See Atlas Tool,* 614 F.2d at 870.

▮ Even where the relationship between the predecessor and successor corporations does not fit neatly into the traditional continuation or de facto model, courts will apply the continuity of enterprise theory to impose corporate successor liability. *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 175 (5th Cir.1985) (noting eight elements of continuity of enterprise theory, including whether successor corporation held itself out as a continuation of the predecessor company); *accord United States v. Carolina Transformer Co.,* 978 F.2d 832, 838 (4th Cir.1992) (holding that the district court did not err in applying eight factors of continuity of enterprise theory to impose liability on successor corporation). Indeed, successor liability can be imposed under federal common law, which is broader than the state law exceptions, "in order to protect federal rights or effectuate federal policies, [and] this theory allows law suits against even a genuinely distinct purchaser of a business if (1) the successor had notice of the claim before acquisition; and (2) there was 'substantial continuity in the operation of the business before and after the sale.'" *Chicago Truck Drivers v. Tasemkin, Inc.,* 59 F.3d 48, 49 (7th Cir.1995) (*quoting EEOC v. G–K–G, Inc.,* 39 F.3d 740, 748 (7th Cir.1994)); *see also Atlas Tool,* 614 F.2d at 871 (stating the Court's belief, in applying New Jersey law, that New Jersey courts would not regard the favored public policy of the collection of the federal revenue any less highly than public policy considerations which favor compensating tort victims or appraisal rights to minority shareholders).

▮ Applying the factors above, this Court finds that Today's Child is the mere continuation and/or successor in interest of the taxpayer, Wee Care. The officers and shareholders of Today's Child, the successor corporation, were virtually identical with those of Wee Care. Control of the two corporations remained in the same hands: Today's Child was run by Patricia Rota, the same person who ran the operations of Wee Care. Today's Child was in the identical business as Wee Care, provided the same services at the same location to the same students of Wee Care without interruption. Wee Care's assets, such as its good will, faculty, furniture, equipment, and premises were used and assumed by Today's Child. Today's Child also acquired and used the same telephone and facsimile numbers used by Wee Care. Although plaintiff argues that its motivation for incorporating Today's Child was not tax-related, the subjective motivation of a party is not a necessary element according to the case law. Given the objective facts of this case, the Court is satisfied that Today's Child is the continuation of Wee Care, and that therefore the IRS levies were proper.

## B. *Alter Ego*

▮ "The IRS may seek to proceed against a nominee or alter ego of a taxpayer for the 'purpose of satisfying the taxpayer's obligations.'" *Ross Controls,* 164 B.R. at 727 (quoting *Lemaster v. United States,* 891 F.2d 115, 119 (6th Cir.1989)). The critical factors in making a determination as to alter ego status include who has active or substantial control as well as the similarities that exist between the two businesses. *See id.* "Courts should consider whether the old and new employers share 'substantially identical management, business purpose, operation, equipment, customers and supervision, as well as ownership.'" *Id.* (*quoting NLRB v. Omnitest Inspection Services, Inc.,* 937 F.2d 112, 117 (3d Cir.1991)).

▮ The Court finds that Today's Child is the alter ego of Wee Care. Today's Child assumed the business of Wee Care at the same premises used by Wee Care by providing the same full time day care services. Today's Child used the same offices, the same classrooms, the same furniture and video equipment, as well as the same toys and play equipment used by

Wee Care in providing day care services. Today's Child used the same telephone and facsimile number as Wee Care, as well as the same mailing address. Even more importantly, the same person exercised exclusive control over the operations of both Wee Care and Today's Child—Patricia Rota—who was also President of both entities. Furthermore, there is little evidence that Today's Child was adequately capitalized, that it actually issued stock, or that it observed corporate formalities aside from one board meeting. Wee Care checks were deposited into a Today's Child bank account, and Today's Child checks were deposited into Wee Care's bank account. On the two checking accounts at Commerce Bank, the names Wee Care and Today's Child appear on the same signature cards. Parents were led to believe that Wee Care and Today's Child were one and the same. The teachers' duties remained the same, the tuition remained the same, and the curriculum remained the same. Many of the children were transferred from Wee Care to Today's Child when Wee Care ceased operating as a going concern. Given these facts, the Court is satisfied that Today's Child is the alter ego of Wee Care.

## IV. CONCLUSION

The Court is not unsympathetic to plaintiff in this case. It appears that if Wee Care Academy had filed for bankruptcy, or if the principals thereof had decided not to continue in the day care business and had instead decided to pursue nonentrepreneurial careers, the outstanding tax liability could have been avoided. However, for better or for worse, our laws impose tax burdens on the industrious and profitable. And as this Court finds that Today's Child is the successor corporation and alter ego of Wee Care Academy, it must also find that the tax levy was legal. Accordingly, based on the foregoing, the Court enters

---

3. In its Amended Complaint, Today's Child alleges that the IRS violated 26 U.S.C. Sections 6331(a) and (d), and, as a result, that their due process rights were violated. How-

judgment in favor of defendant and against plaintiff on the counts contained in plaintiff's Amended Complaint.[3]

An appropriate Order follows.

Clarence C. Newcomer, J.

## ORDER

AND NOW, this day of March, 1998, upon consideration of all the evidence of record and the arguments of counsel, and consistent with the Findings of Fact and Conclusions of Law, it is hereby ORDERED that JUDGMENT is ENTERED in favor of defendant and against plaintiff.

AND IT IS SO ORDERED.

ever, plaintiff did not raise this issue and did not present any evidence thereto. Accordingly, such allegations are dismissed.